IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| G.T., | ) |
|     Plaintiff, | ) Case No. 4:25-cv-00128-HEA |
| v. | ) |
| LIBERTY MUTUAL FIRE INSURANCE COMPANY, JAMES MCLAURIE, and SUSAN MCLAURIE, | ) |
|     Defendants. | ) |

**SUR-REPLY IN OPPOSITION TO MOTION TO REMAND**

Defendant Liberty Mutual Fire Insurance Company ("Liberty Mutual"), by and through its attorneys of record, opposes Plaintiff's motion to remand this action (Doc. 37), and further states:

**I.    INTRODUCTION**

Aside from the 52 year-old Sixth Circuit case of *Stifel*, Plaintiff cites not a single case in which a court found that a prisoner **had** effectively rebutted the presumption that he retains his pre-incarceration domicile, including not one case decided in this appellate circuit or in the past half century. Accordingly, Plaintiff's motion is devoid of any guidance to this Court regarding what quantum of proof would suffice to rebut the presumption. Although Plaintiff criticizes Liberty Mutual's citation of more than 25 cases around the country that have examined what a prisoner must do to rebut the presumption, the rebuttable presumption test is the default rule, and decisions of other federal courts applying the same test offer insight into how this Court should evaluate Plaintiff's motion to remand. Under each of those cases, the presumption was not rebutted, and it is not rebutted here.

Plaintiff's reliance upon *Jones v. Hadican* is misplaced because, as with each of the cases she cites, the case involved a prisoner's "pro se complaint" and analyzed whether the pro se prisoner **plaintiff**, who wanted to be in federal court, met his pleading burden. 552 F.2d 249, 251 (8th Cir. 1977) (holding that he had not). This case does not establish that a non-prisoner plaintiff can simply allege a change in a defendant prisoner's domicile and thereby obtain remand of a case that is diverse. *Cf. Shovah v. Mercure*, 44 F. Supp. 3d 504, 514 (D. Vt. 2014) ("the Court is unaware of precedent indicating that *plaintiff* may rebut this presumption as to the *defendant's* domicile"; emphasis original). Plaintiff cites not a single case remanded in the same posture.

Instead, the case law is clear and abundant that the **prisoner** bears the burden of rebutting the presumption, which starts with his own statement of his intent to indefinitely reside in the state in which he is incarcerated after his release, but which **requires** more than that to corroborate this alleged intent. In this case, we have **neither** of those things.

*Stifel* started with the prisoner's **affidavit** and continued to examine other corroborating evidence. There are dozens of cases that require affidavits or sworn declarations of the prisoner, as discussed more fully in Liberty Mutual's opposition (Doc. 48). But there clearly must be more than "unsubstantiated declarations" to rebut the presumption. *Stifel*, 477 F.2d at 1126; *Hadican*, 552 F.2d at 251. Courts routinely find that even a sworn statement or affidavit, **which is lacking here**, is not sufficient. *See, e.g., Custable v. Zaborski*, No. 19-CV-12686, 2020 WL 13430053, at *1 (E.D. Mich. Jan. 2, 2020); *Street v. Bryant*, No. 1:15CV74, 2015 WL 13122942, at *2 (M.D.N.C. Oct. 20, 2015).

Neither Plaintiff nor James McLaurie offer his affidavit, the bare minimum foundation to rebut the presumption, and we know that James McLaurie has access to a notary.  *See* Doc. 48-4 at p. 8.  The verbose motion to remand and reply rely **solely** upon the answer filed for James McLaurie.  That is not enough.  Very simply, James McLaurie has not rebutted the presumption that he retains his Texas domicile, and Plaintiff's motion is based upon a transparent attempt to utilize procedural sleight of hand to substitute for the actual evidence required.

II. **THE ANSWER IS NOT AN ADMISSION OF JAMES MCLAURIE'S CITIZENSHIP.**

A. **A PARTY CANNOT "ADMIT" A LEGAL CONCLUSION.**

Plaintiff's Amended Complaint sets forth a conclusion of law, namely that James McLaurie "is a citizen of the State of Missouri." (Doc. 34 ¶ 3).  A person cannot "admit" a legal question, only a fact.  "It is well settled, that the admissions of a party in relation to a question of law, is no evidence. Such admissions do not make the law either one way or the other, and where the matter admitted involves a question of law as well as fact, it falls within this rule, and is therefore incompetent proof." *Crockett v. Morrison*, 11 Mo. 3, 5 (1847).  "It is elementary that the doctrine of judicial admissions (when otherwise warranted) pertains only to matters of *fact* which otherwise would require *evidentiary* proof." *Livingston v. Bartis*, No. 4:06-CV-1574 (JCH), 2008 WL 185791, at *6 (E.D. Mo. Jan. 18, 2008) (emphasis original; citation omitted).  "[W]e reiterated that we are reluctant to treat [statements dealing with opinions and legal conclusions] as binding judicial admissions." *Id.* (citation omitted).

A change in domicile requires the concurrence of (1) physical presence at the new location with (2) an intention to remain there indefinitely, or the absence of any intention

3

to go elsewhere.  *Holmes v. Sopuch*, 639 F.2d 431, 433 (8th Cir. 1981); *accord*, *In re Ring*, 144 B.R. 446, 450 (Bankr. E.D. Mo. 1992).  Plaintiff's Amended Complaint alleges the physical presence of James McLaurie in Missouri during his incarceration, but completely fails to allege that he has or had, at any relevant time, the requisite state of mind constituting intent to choose to indefinitely reside in Missouri.  The state of mind or intent is a **fact**, the allegation of citizenship is a **legal conclusion**.  James McLaurie's answer does not admit his citizenship because that is not a question of fact, but a legal conclusion not susceptible to judicial admission, and there is no pleaded fact regarding his intent to indefinitely reside in Missouri for him to have admitted.  Accordingly, the answer admits nothing regarding James McLaurie's citizenship.

   **B. THERE IS NO EVIDENCE SUFFICIENT TO REBUT THE PRESUMPTION.**

   Furthermore, Plaintiff's allegation that James McLaurie would be under physical or legal compulsion to remain in Missouri if he is ever released from prison[1] is not only insufficient to establish the necessary state of mind of the prisoner, it establishes exactly the opposite.  "[T]he acquisition of a domicile of choice involves the exercise of free will." *Eckerberg v. Inter-State Studio & Publ'g Co.*, 860 F.3d 1079, 1085 (8th Cir. 2017) (quotation omitted).  A prisoner's domicile "depends on his own intentions, not on what others may say or believe." *Custable v. Zaborski*, No. 19-CV-12686, 2020 WL 13430053, at *1 (E.D. Mich. Jan. 2, 2020).  "Admitting" to a broad statement of how parole works in Missouri does not constitute an admission of the requisite state of mind to voluntarily

---

[1] Plaintiff misreads Mo. Rev. Stat. § 558.019(3), which requires that a dangerous felon like McLaurie serve a **minimum** prison term of at least 85% of his sentence **or** until the age of 70 **and** 40% of his sentence, which makes him eligible for parole or release no earlier than 2041, and is no guarantee of such release.  *See* Mo. Rev. Stat. § 566.019(5).

4

choose to make Missouri his home after he is free to leave, nor is there anything offered by Plaintiff or McLaurie to **corroborate** any such intent.  Considering a similar circumstance in which a prisoner had agreed to be subject to civil commitment in his state of incarceration after release, a court found this was not sufficient to establish a change of domicile.  *Hall v. Curran*, 599 F.3d 70, 72 (1st Cir. 2010).

To establish a change of domicile, the prisoner must prove both his renunciation of his pre-incarceration domicile and his establishment of a domicile in the state of incarceration.  Plaintiff fails to prove  any ties that James McLaurie has to Missouri independent of the legal compulsion to be here.  Neither Plaintiff nor McLaurie offers any evidence that he was born in Missouri, has family here, has friends or community here, possesses real estate or bank accounts here, votes here, has the prospect of employment here, or any other of the "ties that could not easily be undone" that would suffice to corroborate a statement of intent to change his domicile to Missouri.  *See Garcia Perez v. Santaella*, 364 F.3d 348, 351 (1st Cir. 2004).

As set forth more fully in Liberty's opposition to Plaintiff's motion (Doc. 48), dozens of federal courts have been presented with more evidence than Plaintiff and McLaurie offer here, and still found it to be insufficient to rebut the presumption and show the "truly exceptional circumstances" that would justify a finding that the prisoner's domicile had changed to his state of incarceration.  *See Hadican*, 552 F.2d at 251.  Plaintiff cites not a single case to support the proposition that a prisoner who had already voluntarily "relocated" out of the state of his incarceration more than a decade ago proved an intent to change his domicile back to his state of incarceration in the absence of any proof of present ties to the state.

5

Plaintiff is also misciting *Stifel* by suggesting that it is comparable to the facts here. The Eighth Circuit found that "[p]robably **the most important factor in *Stifel*,** however, was the fact that the prisoner had been convicted of a particularly heinous and highly-publicized crime (murder by letter bomb). As a result, the prisoner made the plausible argument that he would never return to his former domicile because he would be subject to scorn and hostility there." *Hadican*, 552 F.2d at 251 n.2 (emphasis added). James McLaurie committed his crimes in Missouri; under *Stifel* and the controlling precedent of *Jones v. Hadican*, Missouri is the last place he would remain when he has the free will to be elsewhere, particularly as, by his own sworn statement, McLaurie had already "relocated" from Missouri to Texas a decade ago. *See* Doc. 1-9 at p.1 ¶ 1. He had decided that Missouri was not for him long before he was convicted of heinous crimes here, and neither Plaintiff nor McLaurie establish that he has any ties to Missouri separate from his incarceration and potential parole.

## III. LIBERTY MUTUAL IS ENTITLED TO THE PROTECTIONS OF THIS FEDERAL FORUM.

Removal jurisdiction was created to "protect nonresidents from the local prejudices of state courts." C. Wright, A. Miller & E. Cooper, 14B FEDERAL PRACTICE & PROCEDURE, § 3721 (Rev. 4th ed. 2024). Diversity jurisdiction's "basic rationale" is "opening the federal courts' doors to those who might otherwise suffer from local prejudice against out-of-state parties." *Hertz Corp. v. Friend*, 559 U.S. 77, 85 (2010)); *accord, e.g., Aerojet-General Corp. v. Askew*, 511 F.2d 710, 716 n.6 (5th Cir. 1975) (the "very purpose of federal diversity jurisdiction is to avoid bias against parties from outside the forum state"); *Szantay v. Beech Aircraft Corp.*, 349 F.2d 60, 65 (4th Cir. 1965) (the purpose of diversity jurisdiction is "to avoid discrimination against non-residents"); *Rozelle v. Reinsurance*

*Grp. of Am., Inc.*, No. 4:13CV02417 ERW, 2014 WL 272300, at *3 (E.D. Mo. Jan. 23, 2014) ("removal on the basis of diversity aims to protect non-resident litigants from prejudice in state court"); *Perez v. Forest Lab'ys, Inc.*, 902 F. Supp. 2d 1238, 1242 (E.D. Mo. 2012) ("The purpose of federal diversity jurisdiction is to avoid possible prejudice to an out-of-state defendant"). Because an order remanding a case back to state court is not appealable, federal courts should be cautious about remanding so that they do not deprive a removing defendant of its statutory right to a federal forum. 14B FEDERAL PRACTICE & PROCEDURE, § 3721.

Here, Plaintiff seeks to abuse the court system to collect from Liberty Mutual more than $300 million upon a judgment that is founded on factual and legal fictions, and she has tried to orchestrate it so that the Missouri state court system would aid her in such endeavor. *See* Doc. 54 (arguing that Missouri would not permit Liberty Mutual to challenge the unsupportable "findings" in her judgment). Liberty Mutual recognizes that there has been a large volume of filings in this matter, possibly by design in an effort to sway the Court to remand this case.[2] However, Liberty Mutual respectfully requests this Court's patience, as this defendant requires the Court's assistant to avoid a miscarriage of justice in the Missouri state court system. "Generally, a federal district court must exercise its jurisdiction over a claim" of which it has jurisdiction. *Scottsdale Insurance Co. v. Detco Industries, Inc.*, 426 F.3d 996 (8th Cir. 2005).

To illustrate why it would be profoundly prejudicial to Liberty Mutual to be wrongly remanded to state court, consider that the judgment in this matter was crafted for the

---

[2] For example, despite the parties' joint stipulation and motion to stay further filings pending a ruling on the motion to remand (Doc. 49), Plaintiff continues to file documents that the parties agreed would not be filed.

explicit purpose of evading applicable policy language and law after Liberty Mutual had provided its coverage analysis to Plaintiff's counsel, in a cynical attempt to intimidate this defendant into paying extraordinary sums on a non-covered claim. For example, the judgment purports to avoid the policy's "household exclusion" with a finding that Plaintiff, who would have then been between **three and four years old**, and subject to the jurisdiction of the juvenile court system in foster care, **had the legal capacity to decide that she would not reside with her foster parents**.³ Judgment, Doc. 1-3, at pp. 14-15.

Minors are, of course, legally incapable of forming the requisite intent to choose their domicile or residence. *See Dunlap by Wells v. Buchanan*, 741 F.2d 165, 167 (8th Cir. 1984). A child's residence is the same as her parent or guardian. *State ex rel. In Int. of R.P. v. Rosen*, 966 S.W.2d 292, 297 (Mo. App. W.D. 1998). A minor is presumed to lack the capacity to form the intent to establish a residence or domicile apart from her parents. *Martinez v. Bynum*, 461 U.S. 321, 333 n. 14 (1983). A minor has the right to choose where she lives only if she has been emancipated. *See, e.g., Spurgeon v. Mission State Bank*, 151 F.2d 702, 705 (8th Cir. 1945). G.T. was not an emancipated minor, and therefore lacked any legal capacity to make her own choice of residence or domicile. The state court that rendered the judgment routinely recognizes this controlling law.

The finding that a toddler has the legal capacity to decide her own residence or domicile is a legal impossibility, is extraneous and superfluous, having zero relevance to any element of Plaintiff's "negligent supervision" claim, and is controverted by her sworn

---

³ Plaintiff's judgment erroneously uses the term "residence" while purporting to apply the legal test for domicile. "'Residence' is not synonymous with 'domicile.'" *Pruitt v. Farmers Ins. Co.*, 950 S.W.2d 659, 663 (Mo. App. S.D. 1997). A person may have more than one residence for purposes of the household exclusion. *Id.*

8

trial testimony and the evidentiary record in McLaurie's criminal trial.  This absurdity appeared only after Liberty Mutual identified, for Plaintiff's counsel, case law enforcing the "household exclusion" in the policies at issue.  *See Country Mut. Ins. Co. v. Cronin*, 17 F. Supp. 3d 900, 905-06 (E.D. Mo. 2014).  Plaintiff inserted this preposterous finding into her judgment for the express purpose of evading the exclusion.  Plaintiff has already filed a cynical motion urging this Court to give preclusive effect to the "finding" in her judgment.  *See* Doc. 54.  The state court's endorsement of the finding, coupled with the nearly unprecedented size of this single-plaintiff judgment, is gravely concerning.  Indeed, the Missouri judiciary's pattern and practice of purporting to "bind" non-resident insurance defendants to factually- and legally-unsupported findings (*see* Doc. 54) without due process is a violation of these defendants' civil rights.

The enforcement of G.T.'s judgment in this action against Liberty Mutual would be a deprivation of its constitutional rights and an abuse of the judicial system.  *See, e.g., Quisenberry v. Kartsonis*, 297 S.W.2d 450, 457 (Mo. 1956) (a judgment is not enforceable where "there was collusion to recover on a false version of the facts when the defendant would not have been liable on the true version"); *Wells Fargo & Co. v. Taylor*, 254 U.S. 175, 185 (1920) (federal courts can refuse to enforce a state court judgment that is "unconscionable" or "procured through fraud"); *Browning v. Navarro*, 826 F.2d 335, 345 (5th Cir. 1987) ("the corrupt abuse of the judicial process" is grounds for a federal court to refuse to enforce a state court judgment); *Nat'l Sur. Co. v. State Bank of Humboldt, Neb.*, 120 F. 593, 600–01 (8th Cir. 1903) (plaintiffs do not have "license to use the unconscionable judgments of the state court to inflict irremediable injury upon the defendants" over whom a federal court has jurisdiction); *Chevron Corp. v. Donziger*, 974

9

F. Supp. 2d 362, 555-56, 559 (S.D.N.Y. 2014) (federal courts may refuse enforcement of a judgment procured by fraud).  Accordingly, the Court should be highly skeptical of Plaintiff's remand motion.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Liberty Mutual Fire Insurance Company prays that this Court enter its order denying Plaintiff's motion to remand, and for any and all further relief as this Court may deem equitable and just.

> Respectfully submitted,
>
> WALLACE SAUNDERS
>
> BY:  /s/ Angela M. Clark
> Angela M. Clark        MO #52159
> John L. Kellogg        MO #46533
> 200 Unity Circle North, Suite D
> Lee's Summit, MO  64086
> (913) 888-1000    FAX (913) 888-1065
> aclark@wallacesaunders.com
> jkellogg@wallacesaunders.com
> ATTORNEYS FOR DEFENDANT
> LIBERTY MUTUAL FIRE INSURANCE COMPANY

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of April, 2025, a copy of the foregoing was electronically filed with the Clerk of Court using the Court's CM/ECF system, which will give notice of the filing to all counsel of record.

  /s/  Angela M. Clark